Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 CR 47 | DATE | 4/23/2004 |
| CASE TITLE | UNITED STATES vs. HIGHTOWER, ET AL | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Defendants motion (41-1) to dismiss is denied.  Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | APR 28 2004 date docketed | 52 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| DW | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>TASHA HIGHTOWER,<br>TANISHA BAKER,<br>CLARENCE GALLOWAY,<br>MONTRELL STEPHENSON,<br><br>　　Defendants. | No. 04 CR 0047<br>Judge James B. Zagel |



## MEMORANDUM OPINION AND ORDER

　　Defendants Tasha Hightower, Tanisha Baker, Clarence Galloway, and Montrell Stephenson are charged in a single count indictment with mail fraud, in violation of 18 U.S.C. § 1341 and 2. The charge stems from an October 27, 1997, allegedly staged automobile accident, in which Hightower and Baker claimed to be drivers and Galloway and Stephenson claimed to be passengers. Following the staged auto accident, the Defendants allegedly sought legal counsel and medical treatment for non-existent injuries, and as a result, caused a certified letter containing a physician's lien and medical bills for Galloway to be mailed from Affiliated Health Care Associates to Republic Western Insurance Company (insurer of the company from which Hightower rented a truck used in the staged accident) on January 26, 1999. The indictment in this case was returned on January 15, 2004.

　　Stephenson has moved to dismiss the indictment as to him, and all the Defendants have jointly moved to dismiss as well. When evaluating a motion to dismiss an indictment, I should not test the strength or weakness of the Government's case, but should rather determine whether



the allegations in the indictment are sufficient to charge an offense. *United States v. Sampson*, 371 U.S. 75, 78-79 (1962); *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988). All well-pleaded allegations are taken as true for purposes of a motion to dismiss. *United States v. Quintanilla*, 760 F. Supp. 687, 690 (N.D. Ill. 1991), *aff'd*, 2 F.3d 1469 (7th Cir. 1993). An indictment is sufficient to withstand a motion to dismiss if it provides the elements of the offense, informs the defendant of the nature of the charges against him, and enables the defendant to plead the resulting judgment as a bar to subsequent prosecution for same offense. *Russell v. United States*, 369 U.S. 749, 763-64 (1962); *United States v. Neopolitan*, 791 F.2d 489, 501 (7th Cir. 1986). In addition, I should be reluctant to dismiss an indictment prior to trial based solely on a defendant's argument about the sufficiency of the evidence of the crime. In *United States v. Castor*, 558 F.2d 379, 384 (7th Cir. 1977), the Seventh Circuit stated:

> The question is not whether the indictment particularly alleges sufficient facts from which a jury could find that the mailings charged were in furtherance of the scheme, but rather whether the Government conceivably could produce evidence at trial showing that the designated mailings were for the purposes of executing the scheme.

Under this standard, the question of whether the jurisdictional element of the crime and scheme is proper must await trial "unless it so convincingly appears on the face of the indictment that as a matter of law there need be no necessity for such delay." *Id.*

Stephenson's Motion to Dismiss

Stephenson has moved to dismiss on the grounds that the January 26, 1999, mailing is insufficient to bring the indictment within the applicable five-year statute of limitations because "it is not an act of the defendants but was an act of James Whitmer (the undercover FBI agent

2

using a pseudonym) in violation of his obligation as an attorney." He is essentially asking me to dismiss solely because of the alleged insufficiency of the evidence of the crime. However, the lack of a jurisdictional element of the crime and scheme does not "so convincingly appear[] on the face of the indictment." *Castor*, 558 F.2d at 384. Rather, the indictment on its face amply demonstrates that the Government intends to produce evidence at trial that the charged mailing was made in furtherance of the Defendants' scheme to defraud.[1] Furthermore, the Government claims that it can prove that the Defendants contemplated from the beginning that the agent/attorney would perform the necessary acts to effectuate the fraud scheme. The possibility that, as Stephenson argues, the charged mailing could have been sent more than five years after the origination of the scheme to defraud has no jurisdictional consequence because all that is required for statute of limitations purposes is that the mailing itself has occurred within five years of the return of the indictment. *United States v. Garland*, 337 F. Supp. 1, 4 (N.D. Ill. 1971) (noting that even if transactions involving loans and false financial statements occurred more than five years prior to the return of indictment for mail fraud, where each mailing alleged as an offense was well within five years of return of indictment, prosecution was not barred by statute of limitations). Therefore, Stephenson's motion is denied.

Joint Motion to Dismiss

The Defendants jointly move to dismiss on the grounds that the undercover FBI agent who posed as a corrupt attorney for the specific purpose of investigating their fraud allegedly

---

[1] The elements of mail fraud are: (1) a scheme to defraud; and (2) the use of the United States mail in furtherance of this scheme. *Schmuck v. United States*, 489 U.S. 705, 721 (1989); *United States v. Koen*, 982 F.2d 1101, 1106-07 (7th Cir. 1992).

3

violated rule of professional conduct, and thus committed "outrageous government conduct." Both legally and factually, this argument is flawed. As an initial matter, allegations of outrageous government misconduct provide no defense to a criminal defendant in the Seventh Circuit. *United States v. Sherman*, 268 F.3d 539, 550 (7th Cir. 2001); *United States v. Lopeztegui*, 230 F.3d 1000, 1003 (7th Cir. 2000); *United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1995). But even if the doctrine of outrageous government misconduct was available, the Defendants have failed to show that the actions of the undercover agent were "truly outrageous," the standard required to be shown prior to the Seventh Circuit's rejection of the defense. *United States v. Kaminski*, 703 F.2d 1004, 1009 (7th Cir. 1983).

As a general rule, communications that otherwise would be protected by the attorney-client privilege are not protected if they relate to communications in furtherance of contemplated or ongoing criminal or fraudulent conduct. *See Clark v. United States*, 289 U.S. 1, 15 (1933) ("A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told."); *Supreme Court Standard 503(d)*, reprinted in 56 F.R.D. 183, 236 (1972) ("There is no privilege under this rule . . . If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have know to be a crime or fraud."). As explained in *United States v. Weger*, 709 F.2d 1151, 1156 (7th Cir. 1983), "the attorney-client privilege was not created to shield clients from charges for fraudulent conduct, and a client who abuses the attorney-client relationship waives the attorney-client privilege."

Here, the Government alleges that the Defendants retained the undercover agent/attorney for one purpose – to deliberately commit fraud. The genesis of this indictment was an

4

undercover investigation into staged car accidents whereby an agent acting in the undercover capacity of a corrupt attorney would detect and gather evidence against persons making fraudulent insurance claims. To ensure that the undercover agent handled only fraudulent accident claims, the FBI only accepted those cases known to be fraudulent by having the undercover agent "approve" the insurance coverage of the "at-fault driver" before the accident took place. More specifically, a cooperating witness would introduce the undercover agent/attorney to accident "chasers," who did not know that the agent/attorney was an undercover agent for their recruiting efforts. The undercover agent/attorney would not pay the "chaser" unless he brought a copy of the insurance policy for the "at-fault" driver to the undercover agent before the accident was staged.[2] Therefore, when the persons who played the role of "victims" later purported to "retain" the undercover agent/attorney and identified to him the "at-fault" driver, the FBI already was fully aware of the "at-fault" driver's identity and knew that the anticipated claims were fraudulent before the staged accidents even occurred.

By taking these steps, the undercover agent/attorney was never retained by a true client, and there was never a legitimate attorney-client relationship established. Accordingly, the undercover agent/attorney never violated the trust of a real attorney-client relationship. To the extent any such relationship existed, it was a sham created by the Defendants in their attempt to defraud insurance companies. Accordingly, they are not entitled to use the usual protections afforded by a legitimate attorney-client relationship as a shield from criminal responsibility and

---

[2] As the operation proceeded, there were several occasions where the chasers were not able to physically bring the proposed at-fault drivers' insurances policies or rental agreements to the undercover agent/attorney before the staging of the accident. In those instances, however, the chasers told the undercover agent/attorney of the planned accident in recorded conversations, and received "permission" to proceed with the fraudulent accident.

5

basis for dismissal. Having never truly sought the legitimate services of the undercover agent/attorney, the Defendants cannot now complain that the undercover agent/attorney allegedly breached confidences or failed to represent them zealously.[3]

Moreover, far from being considered "outrageous," the Seventh Circuit has approved the use of an undercover agent in the role of a corrupt attorney. In the Operation Greylord case of *United States v. Murphy*, 768 F.2d 1518 (7th Cir. 1985), an FBI agent posed as a corrupt criminal defense attorney in order to fix cases, and the Court rejected what is essentially the same argument presented by these Defendants. The Greylord defendants argued that the undercover agents violated criminal laws, such as perjury, and that "those who commit crimes themselves cannot prosecute others' crimes." *Id.* at 1528. Rejecting this argument, the Court explained:

> Because the crime leaves no complaining witness, active participation by the agents may be necessary to establish an effective case. The agents' acts merely appear criminal; they are not, because they are performed without the state of mind necessary to support a conviction.

*Id.* After all, "criminal proceedings are not designed to establish the relative equities among police and defendants." *Id.*

---

[3] This was the same conclusion reached by Judge Conlon on March 15, 2004, when she denied an identical motion to dismiss in the case of *United States v. Rodrigues*, No. 04 CR 0105, a case involving an identical fraud scheme and an identical use of an undercover agent/attorney retained by the defendants. As Judge Conlon noted, because the defendants "retained" the undercover agent/attorney in order to perpetrate a fraud, pursuant to the crime-fraud exception to the attorney-client privilege there never was a legitimate attorney-client relationship established. Furthermore, she noted, the doctrine of "outrageous government misconduct" does not exist in this Circuit.

Here, the Defendants argue that the undercover agent violated the rules relating to professional conduct, instead of laws such as perjury.[4] As described above, because the Defendants never sought to create a legitimate attorney-client relationship, there was never a real attorney-client relationship for the undercover agent to violate. Also, just as in *Murphy*, the agent did not act with the state of mind necessary to violate the professional conduct rules.

Beyond the allegations of unethical conduct, the Defendants also complain that the undercover agent/attorney defrauded insurance companies and the public. Once again, however, *Murphy* rejected similar allegations. In fact, far from finding the use of an undercover agent/attorney to be "outrageous," the Seventh Circuit noted that the "FBI and the prosecutors behaved honorably in establishing and running Operation Greylord." *Murphy*, 768 F.2d at 1529. Rejecting the idea that "phantom cases" diminished the rights of third parties, the Court noted that the operation harmed "only the corrupt." *Id.* The same can be said of this instant operation. Neither the insurance companies nor the public was harmed by it. Accordingly, the Defendants have failed to show that the use of an undercover agent/attorney in the case was outrageous or even misconduct.

---

[4] Defendants also argue that the undercover agent violated federal law, specifically the McDade Act, 28 U.S.C. § 530B, but this law was not in effect until after the completion of the undercover operation.

7

For the reasons above, the Defendants' joint Motion to Dismiss and Stephenson's separate Motion to Dismiss are DENIED.

ENTER:

/s/ James B. Zagel

James B. Zagel
United States District Judge

DATE: 23 April 2004